# Bolen v. Commonwealth.

(Decided Sept. 29, 1936.)

D. G. BOLEYN for appellant.

B. M. VINCENT, Attorney General, and W .OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

On February 8, 1935, Hence Hicks, an elderly man who lived alone on a farm in Knott county, was found dead in a field where he had been working. Investiga-

tion revealed that he had been killed by a bullet which penetrated his head, entering at the back and lodging under the skin over one of his eyes.

By joint indictment, Estill Conley and Elisha Bolen were charged with the murder. On separate trial Bolen has been convicted and sentenced to life imprisonment. He is appealing.

The evidence for the commonwealth shows in substance that Silas Conley lives about 3 miles from the home of deceased, and appellant's father lives in the same community. On Wednesday before the homicide appellant's father sent him to the home of Silas Conley to assist in some work on the latter's farm, and that day he assisted Estill Conley in cutting some rail timber. He returned the next morning to continue the work, and he and Estill started toward the place where they had been working on the previous day.

Estill Conley, who had already been convicted and given life sentence, testified that appellant said on Thursday morning that he wanted to go over and buy or trade for a gun of Hence Hick's and requested him to go along. Appellant picked up a .22-caliber rifle of Sam Conley, a brother of Estill, saying that Silas had said he might take it and that they would hunt squirrels on the way; that they went by the place where they had worked on the previous day and over the ridge into the timber bordering the field where Hence Hicks was at work, and, when they were about 100 yards from Hicks, appellant said, "Stay here while I go on down and trade him out of his gun"; that appellant went on about 10 steps, turned around and said, "A man ought to kill the old man, he's got money on him"; that appellant then went on up behind a large rock and fired the shot that killed Hicks; that after the shot was fired appellant ran down to where Hicks had fallen and later returned with some money, giving him about $43; that appellant had some more money in his hand but refused to show it to him or to tell him how much it was; that they returned to the home of Silas Conley but for some reason unexplained appellant arrived there first. Sam Conley testified that appellant took the .22 rifle with him that morning and he thought appellant and his brother had gone back to work; that they requested him to bring them some water the day before, so some time during the morning he carried water to the place where they

had been at work, but they were not there; that about 11 o'clock appellant returned to the house with the gun, followed a little later by Estill.

A few days after the homicide, the son of deceased and other relatives and friends went to the place where Hicks was killed and upon investigation found tracks behind the large rock about 30 yards from where Hicks had fallen. The tracks of one man led to and from the latter point. There were tracks of two men found near the rock, and upon tracing them it was found that the parties had come from and returned to Silas Conley's place. One of the men had worn a large broad shoe and the other a narrower more pointed one. These tracks corresponded with the tracks found where the young men had cut the rail timber and with shoes worn by Estill Conley and Elisha Bolen at the examining trial. The Conley boys stated that appellant had some .22-long cartridges in his pocket, and the evidence discloses that this was the character of bullet that was taken out of deceased's head. Appellant admitted that he worked at Conley's on Wednesday and returned again on Thursday; that on Wednesday they had found a squirrel and called to Silas Conley to come and bring the gun to kill it. When they left the house on Thursday, Estill took the gun, saying that they might see another squirrel; that they had been at work about 10 or 15 minutes when some one came on the hill above them and called for Estill; that after the party had called a second time, Estill left, taking the gun with him, and told appellant that if he did not return to go ahead with the work until dinner, and that he worked until about noon, went to the house, and a little later Estill came in. He admitted that he had some .22 cartridges in his pocket, but denied that he took the gun or that he shot Hicks or in any way participated in the homicide. There is considerable evidence concerning acts and statements of appellant and Estill Conley after the killing, but the foregoing is in substance the material evidence.

It is first argued that the court erred in not requiring a witness who had testified concerning the tracks and apparent number of the shoes that made them, to measure before the jury his shoes and the shoes worn by appellant at the time. This witness had made no measure of the tracks found but merely gave his opinion concerning the size of the shoes. The court permitted measurements of appellant's shoes to be made with two

or three different devices in the presence of the jury. It is threfore apparent that no error was committed in this particular.

It is next argued that the reasonable doubt instruction is erroneous, in that it did not require the jury to believe from the evidence that appellant had been proven guilty beyond a reasonable doubt. Section 238 of the Criminal Code of Practice provides:

"If there be a reasonable doubt of the defendant being proven to be guilty, he is entitled to an acquittal."

While the criticized instruction does not follow the language of the Code and is much longer than necessary, it embodies in substance the quoted provisions of the Code. Instructions in the form given have been approved by this court; however, it has been suggested in numerous cases that in giving an instruction on reasonable doubt the better practice is to follow the language of the Criminal Code of Practice as expressed in the quoted section. The persistence of courts in disregarding this suggestion and in giving more complicated instructions has resulted in confusion and much contention.

It is further argued that the evidence of the accomplice, Estill Conley, is not sufficiently corroborated as is required by section 241 of the Criminal Code of Practice. Sam Conley testified that on Thursday morning appellant had .22-caliber cartridges in his pocket; that when he and Estill left, ostensibly to continue work cutting rail timber, appellant took the .22 rifle with him. When this witness later went to where they had been at work, they were not there, and did not return until about noon. Tracks of two men leading from Conley's place to the scene of the killing and returning to Conley's corresponded with tracks found at the place where the two young men had been working on the previous day and with the shoes worn by them at the examining trial.

In the case of Williams v. Commonwealth, 257 Ky. 175, 77 S. W. (2d) 609, the rule that had formerly obtained concerning corroborating evidence was greatly relaxed to meet the manifest purpose and spirit of section 241 of the Criminal Code of Practice. In that case it was held that corroborating evidence was sufficient if it tended to connect the accused with the commission of

the crime, and from the foregoing recital it is apparent that the corroborating evidence fully meets the rule laid down in the Williams Case which has since been consistently followed.

Finally, its is urged that, if there be some evidence tending to connect appellant with the commission of the crime, a consideration of the evidence as a whole will reveal that the verdict is flagrantly against the evidence. It only requires a consideration of the salient facts as above recited to refute this argument, and it is quite obvious that the decision of the jury must have turned upon the credibility of the witnesses. If credit is to be given the witnesses for the commonwealth, the verdict is amply sustained, and the established rule that it is the province of the jury and not of the court to determine the credibility of witnesses and the weight to be given their evidence is too well recognized to require citation of authority.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.